UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

                    Plaintiff,

                                                    Case No. 21-cr-253-pp

          v.

SAMUEL L. SPENCER,

                    Defendant.

**ORDER OVERRULING DEFENDANT'S OBJECTION (DKT. NO. 77), ADOPTING REPORT AND RECOMMENDATION (DKT. NO. 72) AND DENYING DEFENDANT'S MOTION TO SUPPRESS (DKT. NO. 58)**

On November 9, 2020, an investigator with the Racine County Sherriff's Office and the FBI's Human Trafficking Task Force sought a warrant to search the defendant's residence for evidence of sex trafficking and gun possession. Dkt. No. 60-1. Magistrate Judge William Duffin approved the application and issued the search warrant. Id. During the subsequent search, law enforcement recovered a cell phone belonging to co-defendant Erika Buie. On December 29, 2020, an FBI agent on the task force applied for a search warrant for information connected with five separate TextNow accounts associated with the defendant and Buie. Dkt. No. 60-2. Magistrate Judge Stephen Dries approved the application and issued this search warrant. Id.

On December 21, 2022, the defendant filed a motion to suppress all evidenced derived from these two searches, arguing that law enforcement knowingly failed to include in the affidavits supporting the search warrant

Case 2:21-cr-00253-PP   Filed 05/15/23   Page 1 of 29   Document 82

applications "highly relevant information" that undermined the credibility of the two individuals upon whose statements the warrants were based. Dkt. No. 58 at 2. The defendant asserted that the second affidavit also included "tainted information" obtained from the first warrant. Id. at 5–6.

On February 16, 2023, Magistrate Judge Nancy Joseph issued a report and recommended that this court deny the motion to suppress. Dkt. No. 72. Judge Joseph opined that even if the omitted credibility information had been included in the search warrant affidavit, the affidavit still would sufficiently allege probable cause to search the residence and the TextNow accounts. Id. at 15. Judge Joseph also denied the defendant's request for a Franks hearing. Id.

On March 23, 2023, after receiving an extension of time, the defendant filed an objection, arguing that the affidavit's omission of "clearly material" adverse credibility information invalidates the warrant. Dkt. No. 77 at 3. The government filed its response to the objection on April 6, 2023. Dkt. No. 78. The defendant filed a reply on April 13, 2023. Dkt. No. 79.

The court will adopt Judge Joseph's recommendation and deny the defendant's motion to suppress.

## I.    **Factual Background**

Neither party objected to Judge Joseph's factual findings, which were taken from the affidavits and search warrants attached as exhibits to the defendant's motion to suppress. See Dkt. Nos. 60-1, 60-2.

A. November 9, 2020 Search Warrant for the 58th Street Residence

On November 9, 2020, Racine County Sheriff Investigator Heather Spranger sought a warrant to search the defendant's home at 2718 N. 58th Street in Milwaukee for evidence of sex trafficking and gun possession. Dkt. No. 60-1 at 1. Spranger was working with the FBI's Milwaukee Human Trafficking Task Force. Id. at ¶1. In her affidavit supporting the search warrant, Task Force Officer ("TFO") Spranger stated that on August 1, 2016, the Glendale Police Department stopped the defendant for a traffic infraction. Id. at ¶8. Upon discovering that the defendant had an active warrant for battery from the Franklin Police Department, officers arrested the defendant. Id. At the time of the stop, an adult female, referred to as "Victim 1" in the affidavit, was a passenger in the defendant's vehicle. Id. Victim 1 said that she knew the defendant as "Bin Laden" and disclosed to the Glendale officers that the defendant was forcing her to engage in commercial sex acts and taking "all the profits of such activity." Id. Victim 1 stated that the defendant would take photos of her and use them to post commercial sex advertisements for her online. Id.

TFO Spranger's affidavit stated that between August 2016 and December 2016, Victim 1 left and returned to the defendant multiple times, usually coinciding with periods when she was incarcerated. Dkt. No. 60-1 at ¶9. During the periods when she was away from the defendant, Victim 1 gave multiple interviews to members of the task force. Id. Victim 1 stated that the defendant controlled when she ate, slept and performed commercial sex acts.

3

Id. at ¶10. Victim 1 disclosed that the defendant had other girls working for him and that the defendant would transport her to Iowa and Chicago for commercial sex acts. Id. According to TFO Spranger's affidavit, Victim 1 explained that the defendant instructed her to charge $250–350 for an hour and $150–200 for a half hour, and that the defendant imposed rules for her commercial sex dates. Id. at ¶11. Victim 1 stated that the defendant would count the condoms he gave her to ensure that he was being paid for every date she did. Id. Victim 1 also disclosed that the defendant admitted to trafficking the sixteen-year-old daughter of another woman who worked for him. Id. at 12.

TFO Spranger's affidavit indicates that Victim 1 stated the defendant also sold illegal drugs, including heroin, cocaine/crack and crystal meth, and that when the defendant used cocaine himself, he would become extremely aggressive. Dkt. No. 60-1 at ¶13. Victim 1 reported that the defendant would cause her physical harm "all the time," including once beating her "so severely" that she suffered bone fractures and a broken nose requiring hospital treatment. Id. at ¶14. Victim 1 stated that the defendant beat the other women and girls working for him. Id. According to Victim 1, she also became addicted to heroin because the defendant provided her the drug. Id. at ¶15. Victim 1 explained that she would experience withdrawal symptoms after a few days without heroin and would contact the defendant to provide more heroin, but the defendant would not give her any drugs unless she performed a commercial sex act. Id. Victim 1 also stated that the defendant would post advertisements for commercial sex acts featuring her photographs. Id. at ¶16. Victim 1

4

provided law enforcement with an email address and phone number the defendant used in posting these advertisements. Id.

TFO Spranger averred that she was aware that on February 25, 2012, the Milwaukee Police Department had interviewed Victim 1 at Mount Sinai Hospital, where "Victim 1 had requested to speak with law enforcement about a pimp." Dkt. No. 60-1 at ¶17. During this interview, Victim 1 reported that the defendant had taken over trafficking her from another pimp around the time of her birthday the previous year, which was September 2011. Id. At the time, officers noted that Victim 1 had a large scar on her face, which Victim 1 explained came from the defendant striking her with a belt. Id.

In the affidavit, TFO Spranger averred that on July 31, 2020, an adult female, referred to as Victim 3, called police to report an armed robbery taking place at 2718 N. 58th Street in Milwaukee. Dkt. No. 60-1 at ¶18. Victim 3 informed officers that she was doing laundry at this address, which she stated belonged to co-defendant Buie, when she was robbed at gunpoint of $328, an LG phone, twenty lottery tickets, a bag of laundry and a large black purse. Id. Victim 3 stated that she knew one of the suspects as "Samuel," Buie's boyfriend. Id. at ¶19. Later that day, Victim 3 identified the defendant from a photo array as "Samuel" and told law enforcement that he also resided in the lower unit of Buie's residence, which was the 58th Street residence. Id. In describing the events of the robbery to officers, Victim 3 stated that the defendant and another male known to her as "Nephew" were armed with firearms and used force against her, and that the defendant strangled her,

5

struck her in the back of the head, struck her on the left side of the face, jumped on top of her and verbally threatened her. Id. at ¶¶19–22. Officers observed visible red marks on Victim 3's neck. Id. at ¶20.

TFO Spranger averred that on August 14, 2020, the task force conducted a follow-up interview with Victim 3. Dkt. No. 60-1 at ¶24. Victim 3 told officers that she knew the defendant by various nicknames, including "Sam," "Ben," "Bin Laden," "Ben Ready" and "Benjamins." Id. Victim 3 informed the officers that the defendant mostly sells drugs and described him as dangerous to women because he is physically abusive. Id. at ¶25. Victim 3 recounted a specific incident in which she saw the defendant use physical violence against "another white female who worked performing commercial sex acts dates for him." Id.

The affidavit avers that Victim 3 told law enforcement that Buie posts commercial sex advertisements on a website and that many of the commercial sex dates take place at the 58th Street residence. Dkt. No. 60-1 at ¶27. Victim 3 stated that Buie runs a webcam service from the residence, distributing erotic videos featuring women. Id. at ¶28. Victim 3 also explained that the women who worked for Buie and the defendant performed commercial sex dates in the basement of the residence. Id. at ¶30. The affidavit stated that according to Victim 3, the defendant is "known to keep women hostage at the apartment" by threatening them with physical injury, taking their IDs and credit cards and taking and monitoring their phones. Id. at ¶32. Victim 3 informed law enforcement that the defendant transported the women to known

6

prostitution tracks, that he kept all of the money that the women made from commercial sex acts and that the defendant controlled her by manipulating her crack cocaine addiction, providing her drugs only if she gave him the money she earned by performing commercial sex dates. Id. at ¶35.

The task force conducted an additional interview of Victim 3 on August 28, 2020. Dkt. No. 60-1 at ¶36. During this interview, Victim 3 admitted to performing commercial sex acts at the defendant's direction and that she and multiple other women performed commercial sex work out of the 58th Street residence. Id. Victim 3 also stated that the defendant kept a "machine gun" in the kitchen and uses the text application "TextNow" for "everything," including selling drugs and advertising women for commercial sex acts. Id. at ¶¶38–39.

TFO Spranger averred in the affidavit that case agents located commercial sex act advertisements for another victim, Victim 2, who Victims 1 and 3 both identified. Dkt. No. 60-1 at ¶43. The affidavit states that case agents confirmed that the IP address used to post these advertisements was associated with Buie and that the billing address for the account listed the 58th Street residence. Id. at ¶44. Law enforcement also located a commercial sex advertisement for Victim 3, which they connected to Buie and the 58th Street residence as well. Id. at ¶¶45–47.

Magistrate Judge William Duffin signed and issued the November 9, 2020 warrant for the 58th Street residence. Dkt. No. 60-1 at 1.

7

B.   December 29, 2020 Search Warrant for TextNow Accounts

On December 29, 2020, FBI Special Agent Blake Shubert applied for a search warrant for information associated with TextNow accounts connected with the defendant and Buie. Dkt. No. 60-2 at 1. Agent Shubert's supporting affidavit relied on much of the information provided by Victims 1 and 3. See id. at ¶¶15–48. Agent Shubert stated that law enforcement executed the search warrant of the 58th Street residence on November 10, 2020 and "seized numerous digital devices." Id. at ¶54. One of these devices was a cell phone associated with Buie in which law enforcement located text messages between Buie and the defendant discussing the defendant's TextNow accounts. Id. at ¶¶55, 64.

Magistrate Judge Stephen Dries signed and issued the December 29, 2020 warrant for the TextNow accounts. Dkt. No. 60-2 at 1.

C.   The Charges

On March 22, 2022, a federal grand jury sitting in the Eastern District of Wisconsin returned a five-count second superseding indictment against the defendant and Buie, charging the defendant with sex trafficking by force, fraud and coercion and charging both the defendant and Buie with conspiracy to commit sex trafficking, in violation of 18 U.S.C. §§1591(a)(1), 1591(b)(1) and 1594(c). Dkt. No. 17. On April 6, 2022, the defendant was arraigned on the charges and entered a plea of not guilty. Dkt. No. 20.

8

## II.    Procedural Background

### A.    Defendant's Motion to Suppress (Dkt. No. 58)

On December 21, 2022, the defendant moved to suppress all evidence and derivative evidence obtained from both the November 9, 2020 search warrant for the 58th Street residence and the December 29, 2020 search warrant for the defendant's and Buie's TextNow accounts. Dkt. No. 58. The defendant asserted that the probable cause for both warrants relied on statements from Victim 1 and Victim 3, and that these statements were the only evidence of trafficking. Id. at 1. According to the defendant, although law enforcement was aware of "a wealth of information" that undermined the credibility of these women, including "30 criminal convictions" and arrests "for lying to the police on numerous other occasions," the affidavits failed to provide any information about their credibility. Id.

Relying on United States v. Glover, 755 U.S. 811, 814 (7th Cir. 2014), the defendant argued that by entirely omitting all credibility information, "the affidavit provided insufficient basis for the search warrant." Dkt. No. 58 at 6. The defendant contended that like in Glover, the case for probable cause hinged on Victims 1 and 3's claims, "making any 'known . . . and damaging information' about their credibility highly relevant, indeed 'crucial.'" Id. at 8 (quoting Glover, 755 U.S. at 816–17). The defendant argued that Victim 1 and Victim 3 "shared many of the same credibility concerns" that the informant presented in Glover. Id. at 8–9. The defendant stated that Victim 1 had eleven criminal convictions and had provided aliases "to deceive police on at least 10

9

different occasions." Id. at 9 (citing United States v. Reeves, 210 F.3d 1041, 1045 (9th Cir. 2000)). The defendant also alleged that occasionally, when Victim 1 made statements implicating the defendant, Victim 1 was arrested for criminal activity and thus had a motive to lie. Id. For example, the defendant contended that in providing Victim 1's August 2016 statements to law enforcement, the affidavit described her only as "a passenger" in the defendant's vehicle and did not mention that she also was arrested for possessing drugs and drug paraphernalia and for lying about her name. Id. (citing Dkt. No. 60-1 at ¶8; Dkt. No. 60-2 at ¶15). The defendant argued that the circumstances of Victim 1's arrest provided a motive for her to lie because she wanted to avoid criminal charges. Id. As for Victim 3, the defendant indicated that she also "had at least 19 criminal convictions" and "a history of providing aliases to deceive police." Id.

According to the defendant, the warrant affidavits provided no information to the magistrate judges that might have triggered an inquiry into Victim 1 and Victim 3's credibility. Dkt. No. 58 at 9. The defendant argued that because the warrant affidavits omitted this "vital credibility information," it "left the magistrate[s] unable to fulfill [their] role as a neutral arbiter and therefore provided an insufficient basis for finding probable cause to support the search warrant." Id. at 10 (alterations in original) (quoting Glover, 755 U.S. at 818). The defendant added that the second warrant affidavit for information related to the defendant's and Buie's TextNow accounts included information that was the fruit of the first invalid warrant. Id.

Finally, the defendant contended that the warrants were invalid and that the good faith exception did not apply because the affiants misled "the magistrate with a reckless or knowing disregard for the truth." Dkt. No. 58 at 13 (quoting Glover, 755 F.3d at 819). In Glover, the Seventh Circuit remanded and instructed the district court to hold a Franks hearing to determine whether the affiant acted with reckless disregard for the truth. Id. The title of the defendant's motion included "Request for a *Franks* Hearing," dkt. no. 58 at 1, but in the body of his motion, the defendant indicated that although the court *could* hold such a hearing, "it's not necessary" in this case, id. at 13. According to the defendant, the affidavits' omissions of the credibility information were "clearly material," id. at 13, n.2, and provided "sufficient 'evidence to support a reasonable and thus permissible inference of reckless disregard for the truth,'" id. at 13–14 (quoting Glover, 755 F.3d at 820). The defendant asserted that the Seventh Circuit has described the need for information about an informant's credibility as "vital" and "crucial" to evaluating an affidavit for probable cause, and that "[t]he failure to include that information is 'fatal' to a probable cause finding." Id. at 14.

B.    Report and Recommendation (Dkt. No. 72)

On February 16, 2023, Judge Joseph issued her report recommending that this court deny the motion to suppress. Dkt. No. 72.

Judge Joseph began by addressing whether a hearing was warranted under Franks v. Delaware, 438 U.S. 154 (1978) to address the affiant's alleged intentional and/or reckless omissions in the affidavits. Dkt. No. 72 at 2, 6.

11

Judge Joseph first summarized the defendant's argument that in cases where credibility information is omitted from the warrant affidavit, <u>Glover</u> "instructs that the omission is presumed material and the affidavit is deficient 'as a matter of law,' leaving only the question of whether the officer acted either intentionally or with reckless disregard for the truth." <u>Id.</u> at 7 (citing Dkt. No. 58 at 9). Judge Joseph disagreed with this interpretation and stated that she did not read <u>Glover</u> as creating such a bright-line rule. <u>Id.</u> at 9. First, Judge Joseph noted that <u>Glover</u> addressed the credibility of "informants," not the credibility of sources generally. <u>Id.</u> (citing 755 F.3d at 816). Judge Joseph explained that this distinction is important because in determining reliability, the Seventh Circuit places significance on the status of the individual providing the information to law enforcement. <u>Id.</u> (citing <u>United States v. Towns</u>, 913 F.2d 434, 441 (7th Cir. 1990); <u>Draine v. Bauman</u>, 708 F. Supp. 2d 693, 700 (N.D. Ill. 2010)). According to Judge Joseph, nothing in the <u>Glover</u> court's language indicates that a search warrant affidavit will automatically fail in all cases where credibility information is completely omitted. <u>Id.</u> at 10 (citing 755 F.3d at 816–17, 820). To the contrary, the <u>Glover</u> "court specifically noted that '[w]here information about credibility is not available, other factors such as extensive corroboration may overcome the doubt inherent in relying on an informant without a track record.'" <u>Id.</u> (alteration in original) (quoting 755 F.3d at 818).

Judge Joseph pointed out that Seventh Circuit cases following <u>Glover</u> reiterate this finding that although information about an informant's credibility is crucial, its omission "is not necessarily fatal." Dkt. No. 72 at 10 (quoting

United States v. Bradford, 905 F.3d 497, 504 (7th Cir. 2018)). See also United States v. Woodfork, 999 F.3d 511 (7th Cir. 2021); United States v. Sanford, 35 F.4th 595 (7th Cir. 2022)). For example, in Bradford, the search warrant affidavit contained facts that a participant in the illegal activity had told law enforcement, and although the affidavit mentioned the individual's role in the current illegal activity, it failed to mention that at the time of the warrant application, the individual had three prior felonies, was on probation and was paid by law enforcement for his services as an informant. Dkt. No. 72 at 10–11 (citing Bradford, 905 F.3d at 501–02). Judge Joseph noted that the court nevertheless upheld the warrant: "Still, we're satisfied that the June 9 warrant was facially valid. Smith's information was fresh, firsthand, quite detailed, and corroborated, all of which supports the magistrate's finding of probable cause." Id. at 11 (quoting Bradford, 905 F.3d at 504). Judge Joseph explained that the Bradford court distinguished that case from Glover on the basis that omission of the credibility information in Glover was fatal only due to "the weak showing on the primary factors relevant to probable cause." Id. (citing Bradford, 905 F.3d at 504–05).

Judge Joseph concluded there was no reason to stray from the "typical" Franks analysis in which the defendant must show that the facts omitted from a warrant affidavit were material; "that is, if the fact[s] were included, the affidavit would not support a finding of probable cause." Dkt. No. 72 at 11 (alteration in original) (quoting United States v. Williams, 737 F.2d 594, 604 (7th Cir. 1984)). Judge Joseph stated that in making this determination, she

13

considered the warrant affidavit, "incorporating omitted material facts," and analyzed whether probable cause still exists. Id. (quoting United States v. Harris, 464 F.3d 733, 738 (7th Cir. 2006)).

From there, Judge Joseph moved into an analysis of whether the search warrant affidavits established probable cause. Judge Joseph explained that "[a]n affidavit for a search warrant establishes probable cause when it alleges facts sufficient to induce a reasonably prudent person to believe that a search of a particular place will uncover evidence of a crime." Id. (citing United States v. Peck, 317 F.3d 754, 756 (7th Cir. 2003)). Judge Joseph also observed that "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Id. at 11–12 (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). Judge Joseph noted that the affidavit must contain sufficient evidence to enable the magistrate judge to "exercise independent judgment rather than simply ratifying the conclusions of others," but a court's role in reviewing a judge's previous probable cause finding "is simply to ensure that the judicial officer had a substantial basis for concluding that probable cause existed." Id. at 12 (citing Gates, 462 U.S. at 238–39).

Judge Joseph pointed out that the defendant does not contest that the first search warrant affidavit "for the 58th Street residence, as it currently

14

stands, supports a finding of probable cause." Dkt. No. 72 at 12 (citing Dkt. No. 58 at 3). Therefore, Judge Joseph identified the issue as "whether the addition of certain facts about Victim 1's and Victim 3's history would destroy the affidavit's probable cause" and summarized the credibility information which the defendant argues was omitted. See id. at 12–13 (citing Dkt. No. 58 at 3–4). Judge Joseph then acknowledged the defendant's argument that Victims 1 and 3 are not "the sort of victims to whom courts have given automatic deference, because they too are implicated in illegal activity." Id. at 13 (quoting Dkt. No. 58 at 11). Specifically, the defendant asserted that the omitted information showed that Victims 1 and 3 are "liars" and that it is not reasonable to believe their statements. Id. (citing Dkt. No. 69 at 12). Judge Joseph disagreed and concluded that although the affidavits did not contain the information emphasized by the defendant, they did "not suffer the weaknesses of the affidavit in the *Glover* case." Id.

First, Judge Joseph observed that the affidavits contained detailed and consistent statements from two separate victims. Dkt. No. 72 at 13. Judge Joseph acknowledged the defendant's argument that Victims 1 and 3 knew each other and likely were coordinating their accusations, but Judge Joseph pointed out that there is no evidence of this beyond the defendant's speculation. Id. (citing Dkt. No. 69 at 13). Second, Judge Joseph noted that unlike in Glover, the affidavits here "contained corroboration by law enforcement." Id. at 14. Citing to the warrant affidavits, Judge Joseph summarized the task force's efforts based on Victim 1 and Victim 3's

15

statements, and how their investigations corroborated the information. <u>Id.</u> at 14–15 (citing Dkt. Nos. 60-1, 60-2).

For these reasons, Judge Joseph concluded that even if the omitted information was included in the search warrant affidavits, the affidavits still would have alleged probable cause to search the 58th Street residence and the TextNow accounts. Dkt. No. 72 at 15. Judge Joseph denied the defendant's request for a <u>Franks</u> hearing and recommended that this court deny the defendant's motion to suppress evidence obtained under both warrants. <u>Id.</u>

C.    <u>Objection</u>

The defendant objects, reasserting that the affidavits' omission of "clearly material" adverse credibility information invalidated the warrants. Dkt. No. 77 at 3.

The defendant agrees that <u>Glover</u> does not create a bright-line rule that a search warrant will "automatically fail" whenever credibility information is omitted. <u>Id.</u> And the defendant acknowledges there are cases, like those Judge Joseph cited in her recommendation, "where the informant's credibility is simply immaterial or of minimal materiality." <u>Id.</u> at 4. But the defendant argues that this is a case, like <u>Glover</u>, "where the source's credibility is 'clearly material' because it's essential to the probable cause determination." <u>Id.</u> (citing <u>Glover</u>, 755 F.3d at 820). The defendant contends that "[t]he materiality of the source's credibility depends on the specific facts of a given case." <u>Id.</u>

The defendant then summarizes three of the cases Judge Joseph cited in her recommendation—<u>Bradford</u>, <u>Woodfork</u> and <u>Sanford</u>—and explains how this

16

case is factually distinguishable. Dkt. No. 77 at 4–9. The defendant asserts that these cases demonstrate that "whether the omission of credibility information undermines the magistrate's neutral arbiter role depends on the strength of the warrant aside from the source's information." Id. at 9. The defendant contends that these three cases identify ways in which a warrant application can be strong enough to survive the omission of credibility information, such as "by other investigation that independently establishes probable cause, like controlled buys," or "by allowing the judge to question the source." Id. The defendant appears to argue that because neither of these scenarios was present here, Judge Joseph's recommendation improperly relied on Bradford, Woodfork and Sanford and failed to explain how the present case was more like those three than Glover. Id.

Finally, the defendant argues that although the recommendation observed that Glover addresses the credibility of informants rather than "sources as a whole," it failed to explain why Victims 1 and 3 should be "viewed any differently than an informant." Dkt. No. 77 at 10 (citing Dkt. No. 72 at 9). The defendant reiterates the argument he made in the reply brief in support of his motion to suppress (Dkt. No. 69) that "a source's label is irrelevant." Id. The defendant contends that what matters is "whether the agents are aware of information that undermines" the source's credibility. Id.

The defendant reasserts that the warrant affidavits "made no effort" to inform the magistrate judges that Victims 1 and 3 "had serious credibility problems." Dkt. No. 77 at 10. The defendant points to their total thirty criminal

17

convictions, Victim 1's motives to lie to avoid arrest or prosecution and Victim 1 and 3's "remarkable history of repeatedly lying to law enforcement." Id. The defendant argues that because the question of probable cause turned on the accounts of Victims 1 and 3, their credibility was "clearly material" and omitting information undermining their credibility "left the magistrate unable to fulfill his role as a neutral arbiter and therefore provided an insufficient basis for finding probable cause to support the search warrant." Id. (quoting Glover, 755 F.3d at 818).

In response, the government contends that the relevant question for this court is whether the "two victims' criminal histories—including the nature, recency, and circumstances of those convictions—would destroy the probable cause that the defendant admits the affidavits otherwise make out—including the degree of detail, the firsthand nature of the information, the steps taken by law enforcement to corroborate the victims' accounts, and the ongoing nature of the criminal activity described." Dkt. No. 78 at 3. The government argues that Judge Joseph correctly recommended that the answer is "no." Id. The government asserts there are two reasons why the victims' criminal histories do not affect the probable cause determination on either warrant: (1) the facts included in the affidavits that support the warrants are strong and reliable and (2) the omitted criminal histories are "inconsequential and uninformative." Id. at 4. The government also criticizes the defendant's reliance on examining the factual scenarios in Bradford, Woodfork, Sanford and Glover.

Id. at 5–8. The government advocates for a "more holistic approach" by using the five general factors the Seventh Circuit has identified as useful to analyze the reliability of evidence derived from a source of information. Id. at 8 (citing Sanford, 35 F.4th at 600; Glover, 755 F.3d at 816).

The defendant replies that "[w]hether a source is an informant, a purported victim, or an eyewitness, information known to police that undermines a source's veracity is always relevant to the probable cause analysis." Dkt. No. 79 at 1 (citing Pasiewicz v. Lake Cnty. Forest Pres. Dist., 270 F.3d 520, 524 (7th Cir. 2001); United States v. Ventresca, 380 U.S. 102, 109 (1965)). The defendant asserts that the problem here is not simply a failure to include information about Victims 1 and 3's criminal records. Id. at 2. Rather, the defendant stresses that the affidavits failed to inform the magistrates of the primary issue with their credibility: "their character for untruthfulness" and that "they are fundamentally dishonest people." Id. The defendant then includes analysis of the five factors identified by the government. Id. at 2–5.

A footnote in the defendant's reply brief clarifies that he "has never argued a *Franks* hearing was necessary," but rather "has argued that suppression is appropriate without a *Franks* hearing because the omissions were material under *Glover*, and the omissions permit the inference of a reckless disregard for the truth." Dkt. No. 79 at 6, n.1.

19

### III.    Standard of Review

Parties have fourteen days to file "specific written objections" to a magistrate judge's report and recommendation on a motion to suppress. Fed. R. Crim P. 59(b)(2). When reviewing a magistrate judge's recommendation, the district judge must review *de novo* the recommendations of the magistrate judge to which a party timely objects. 28 U.S.C. §636(b)(1); Fed. R. Crim. P. 59(b)(2), (3). The court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. §636(b)(1).

### IV.    Analysis

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause." U.S. CONST. AMEND. IV. Probable cause exists when, "based on the totality of the circumstances, the affidavit sets forth evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime." United States v. McMillian, 786 F. 3d 630, 639 (7th Cir. 2015). The judge must only "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Gates, 462 U.S. at 238. See also Woodfork, 999 F.3d at 516 (same). The affidavit accompanying a search warrant must contain sufficient information to allow the magistrate to determine probable cause, and the magistrate's "action cannot be a mere ratification of the bare conclusions of others." Gates, 462 U.S. at 239. This court affords "'great deference' to the

20

probable-cause determination of the magistrate who issued the warrant." Bradford, 905 F.3d at 503 (citing Glover, 755 F.3d at 816; Gates, 462 U.S. at 236; United States v. McIntire, 516 F.3d 576, 578 (7th Cir. 2008)).

"The ability of the neutral and detached magistrate to determine probable cause depends on the accuracy of the information the police submit." United States v. Clark, 935 F.3d 558, 563 (7th Cir. 2019). For that reason, "[a] search warrant may be invalid if the police obtain it by deliberately or recklessly providing false, material information or deceptive omissions to the issuing judge." United States v. Vines, 9 F.4th 500, 510 (7th Cir. 2021) (citing United States v. Bacon, 991 F.3d 835, 841 (7th Cir. 2021); United States v. Hansmeier, 867 F.3d 807, 813 (7th Cir. 2017)). See also United States v. McMurtrey, 704 F.3d 502, 508 (7th Cir. 2013) (same).

The court first notes that the defendant does not object to Judge Joseph's order denying the request for a Franks hearing. Rather, as the court has recounted, the defendant insists that he "has never argued a *Franks* hearing was necessary." Dkt. No. 79 at 6, n.1. See also Dkt. No. 58 at 13 (defendant's motion to suppress stating that the court can hold a Franks hearing, "but it's not necessary"); Dkt. No. 77 at 3 (objecting under Fed. R. Crim. P. 59(b), not 59(a)'s standard for non-dispositive motions).[1] The court will not address Judge Joseph's ruling on this issue and will focus only on Judge

---

[1] See United States v. Jefferson, No. 07-CR-09, 2009 WL 4549189, at *1 (E.D. Wis. Nov. 27, 2009) (reviewing magistrate judge's order denying Franks hearing under Fed. R. Crim. P. 59(a) and the recommendation on motion to suppress under Fed. R. Crim. P. 59(b)); United States v. Massey, Case No. 20-cr-162-pp, 2022 WL 214793, at *8 (E.D. Wis. Jan. 25, 2022) (same).

Joseph's probable cause determination and recommendation that this court

deny the defendant's motion to suppress.

This court agrees with Judge Joseph's conclusion that "nothing in the

*Glover* court's language indicates that in all cases where credibility information

is completely omitted will the search warrant affidavit automatically fail." Dkt.

No. 72 at 10. And the court agrees that Seventh Circuit cases following <u>Glover</u>

reiterate that information about a source's credibility is crucial and that

although "[o]mitting this information deprives the magistrate of important data

in the probable-cause calculus," such an "omission is not necessarily fatal[.]"

<u>Id.</u>; <u>Bradford</u>, 905 F.3d at 504. "The materiality of the omission of criminal

history . . . depends on the significance of the history in light of the totality of

the circumstances, including considerations of other factors relevant to the

credibility determination including 'the level of detail, the extent of firsthand

observation, the degree of corroboration, the time between the events reported

and the warrant application, and whether the informant appeared or testified

before the magistrate.'" <u>Sanford</u>, 35 F.4th at 600 (quoting <u>Glover</u>, 755 F.3d at

816). "[E]ven where some credibility information is omitted, a strong showing

on the primary factors can salvage the warrant." <u>Bradford</u>, 905 F.3d at 504

(quoting <u>Glover</u> 755 F.3d at 818). <u>See also</u> <u>United States v. Musgraves</u>, 831

F.3d 454, 460 (7th Cir. 2016) (same). This is not an exhaustive list; "'[n]one of

these factors is determinative,' and 'a deficiency in one factor may be

compensated for by a strong showing in another or by some other indication of

reliability.'" United States v. Mullins, 803 F.3d 858, 863 (7th Cir. 2015) (quoting Peck, 317 F.3d at 756).

The defendant does not object to this finding that omission of credibility information is not necessarily fatal; on the contrary, he states that he was not arguing in his motion to suppress that there is a "bright-line rule" dictating that search warrants will "automatically fail" whenever they omit credibility information. Dkt. No. 77 at 3. What the defendant *does* emphasize is that "[t]he materiality of the source's credibility depends on the specific facts of a given case." Id. at 4. And the defendant is correct on that point; "the sufficiency of a warrant application is a highly fact-specific determination . . . ." Bradford, 905 F.3d at 503–04. See Clark, 935 F.3d at 565 (summarizing facts in a handful of the Seventh Circuit's cases).

The defendant criticizes the recommendation for "fail[ing] to explain why this case was more like *Bradford*, *Woodfork*, or *Sanford* than *Glover*," dkt. no. 77 at 9, but does not explain why he believes it was necessary for Judge Joseph to do so. As the defendant concedes, the recommendation "relied on *Bradford*, *Woodfork*, and *Sanford* for the proposition that *Glover* didn't establish a bright-line rule." Id. Judge Joseph used these cases as examples of situations in which the warrant affidavit omitted credibility information but the court nevertheless upheld the warrant. Judge Joseph did not conclude that the facts of this case were identical or similar to Bradford, Woodfork or Sanford and end the analysis there.

23

Rather, Judge Joseph conducted a fact-specific inquiry to address whether the addition of the omitted credibility information "would destroy the affidavit's probable cause." Dkt. No. 72 at 11, 12. See also Vines, 9 F.4th at 511 (stating that the defendant must "demonstrate that absent the omission or misrepresentation, probable cause would not exist"). Judge Joseph summarized the credibility information that the defendant identified as material:

> Spencer argues that the following credibility information was omitted: As to Victim 1, she has 11 criminal convictions, including: theft, drug possession, identity theft, obstructing, using an oleoresin device to cause bodily harm, bail jumping, and failing to report to jail; she has had dozens of police contacts; in nearly every police contact she lied about something, typically her identity; and she made accusations against Spencer after she herself was arrested for engaging in criminal activity. (*Id.* at 3–4.) As to Victim 3, she has 19 criminal convictions, which includes 7 felonies for such offenses as drug trafficking, obstruction, bail jumping, battery, prostitution, and driving after revocation; and she also lied to police about her identity. (*Id.* at 4.)

Dkt. No. 72 at 12–13 (citing Dkt. No. 58 at 3–4). Judge Joseph then engaged in an analysis of the totality of the circumstances presented to the magistrate judges for review in the affidavits. Because the defendant relied heavily on the Glover case in his motion to suppress, Judge Joseph explained how even though the affidavits did not contain the information that the defendant highlights, they did "not suffer the weaknesses of the affidavit in" Glover. Id. at 13.

First, Judge Joseph pointed out that the affidavits contained detailed and consistent statements from two separate individuals: "Both stated that Spencer sells drugs; is physically abusive towards women; abused Victim 2,

who is the mother of his child; has women perform commercial sex dates at the 58th Street residence; advertises the commercial sex services online; and keeps all of the money the women make from the commercial sex acts, among other details." Dkt. No. 72 at 13. Although the defendant insists that it is likely that Victim 1 and Victim 3 "coordinated their accusations," dkt. nos. 79 at 5, 69 at 13, the court agrees with Judge Joseph that the defendant has not provided any "evidence of this beyond his speculation." Dkt. No. 72 at 13. In his reply brief, the defendant argues that this is "not so," and asserts that in one of her August 2019 statements, Victim 3 "acknowledged knowing [Victim 1] and seeing her in the preceding months, when [Victim 3] started providing information to law enforcement about" the defendant. Dkt. No. 77 at 5. The defendant provides no citation or exhibit in support of this assertion. And evidence that Victims 1 and 3 knew each other and had seen each other in the months before Victim 3's statements to law enforcement does not equate to evidence that the two "coordinated their accusations."

Additionally, Judge Joseph observed that unlike in <u>Glover</u>, the affidavits contained corroboration by law enforcement. Dkt. No. 72 at 14–15. For the warrant to search the 58th Street residence, the affidavit stated that case agents located commercial sex act advertisements from the website "Skipthegames.com" for Victim 2, who both Victims 1 and 3 identified. Dkt. No. 60-1 at ¶43. The IP address used to post these advertisements was maintained by AT&T and according to its records, the subscriber for the IP address on the relevant date and time was Buie and the billing and service address listed was

25

the 58th Street residence. Id. at ¶44. Law enforcement also located a commercial sex advertisement on "Skipthegames.com" for Victim 3, as well as photographs of ten other females, with the same telephone number associated with Buie's IP address and AT&T account. Id. at ¶45. The email address associated with this advertisement was similar to the name of Buie's web camera business and Facebook username. Id. at ¶46. The affidavit averred that records from "Skipthegames.com" show that the IP address used to post these advertisements also was used to post an additional 300 commercial sex advertisements on their website. Id. at ¶47. Furthermore, the task force conducted surveillance and observed the defendant at the 58th Street residence and entering the lower unit on multiple occasions, which is consistent with Victim 3's statement that the defendant resided in the lower unit of the residence. Id. at ¶¶19, 49–51. The affidavit also noted that the defendant had given the 58th Street residence as his address in a Milwaukee County case and to the Milwaukee police officers at the time of his arrest on June 9, 2020. Id. at ¶48.

For the TextNow warrant, law enforcement learned from Victim 3 that the defendant used the application "TextNow" for "everything," which Victim 3 described as including selling drugs and advertising women for commercial sex acts. Dkt. No. 60-2 at ¶46. After executing the November 9 search warrant of the 58th Street residence, law enforcement seized several digital devices, including a Samsung Galaxy cell phone that included multiple usernames previously identified by Victim 3 as used by Buie. Id. at ¶¶54–55. Buie's cell

26

phone contacts included a Facebook messenger contact with a picture of the defendant associated with it, as well as an alias previously identified by Victim 3 as used by the defendant. Id. at ¶56. Law enforcement further corroborated the defendant's Facebook account previously identified by Victim 3, id. at ¶57, and message exchanges between Buie and the defendant regarding commercial sex dates, id. at ¶¶58–59, 61–63. Law enforcement also subpoenaed TextNow and confirmed that two accounts existed registered by the name "benready Sir" under the username "sssir4544" and another account registered by the name "Bengettingit Ready" under the username "sssir4545" with the email address sssir454@gmail.com. Id. at ¶65. These names of "sssir4544" and "sssir4545" were found in message exchanges between Buie and the defendant discussing password changes. Id. Furthermore, after the FBI arrested the defendant in November 2020 on an outstanding federal arrest warrant, recorded jail calls between the defendant and Buie showed the defendant instructing Buie to go to TextNow and get a number with an area code other than 262 and 414. Id. at ¶74.

This court also notes that, as the government pointed out, the affidavits are not completely devoid of any reference to or indication of concerns related to Victim 1 and 3's credibility. See Dkt. No. 78 at 12. The affidavits refer to a period during which Victim 1 left and returned to the defendant multiple times, "usually coinciding with periods when she was incarcerated." Dkt. Nos. 60-1 at ¶9, 60-2 at ¶16. The first affidavit indicates that Victim 3 initially denied "working for" the defendant or Buie, but changed her story in a subsequent

27

interview with law enforcement and admitted that she did perform commercial sex acts at the defendant's direction. Dkt. No. 60-1 at ¶¶35–36. And the affidavits revealed that both Victim 1 and Victim 3 are drug users, stating that the defendant controlled and manipulated Victims 1 and 3 through their respective heroin and crack cocaine addictions. Dkt. Nos. 60-1 at ¶¶15, 35; 60-2 at ¶¶22, 42.

The search warrant affidavits did not explicitly list Victim 1 and Victim 3's arrests/convictions or history of lying to law enforcement. Even if the affidavits had included this omitted credibility information, they still would sufficiently allege probable cause to search the 58th Street residence and the TextNow accounts. The magistrates were not "left . . . unable to fulfill [their] role as a neutral arbiter," Glover, 755 F.3d at 818, and the warrants were appropriately issued based on probable cause.

## V. Conclusion

The court **OVERRULES** the defendant's objection. Dkt. No. 77.

The court **ADOPTS** Judge Joseph's report and recommendation in full. Dkt. No. 72.

The court **DENIES** the defendant's motion to suppress. Dkt. No. 58.

The court **ORDERS** that by the end of the day on **June 5, 2023**, the parties must file a joint status report advising the court of their next steps and

indicating whether they require a scheduling hearing or a date for a change of plea.

Dated in Milwaukee, Wisconsin this 15th day of May, 2023.

**BY THE COURT:**

_____

**HON. PAMELA PEPPER**
**Chief United States District Judge**