UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

        Plaintiff,

v.

        Case No. 21-cr-253-pp

SAMUEL L. SPENCER,

        Defendant.

---

**ORDER GRANTING GOVERNMENT'S MOTION *IN LIMINE* IV (DKT. NO. 99 AT 13-24) AS IT RELATES TO ALLEGED ACTS OF VIOLENCE AGAINST CO-DEFENDANT ERICKA BUIE NOT COMMITTED IN THE PRESENCE OF THE ALLEGED VICTIMS OF COUNTS ONE THROUGH FOUR**

---

    A.    <u>Background</u>

In a motion *in limine*, the government asked the court to admit, as direct evidence, evidence of the defendant's conduct that did not relate directly to the alleged victims of Counts One through Four of the second superseding indictment. Dkt. No. 99 at 13. The motion did not identify many specific incidents but did mention the defendant's allegedly "breaking Ericka Buie's ribs." <u>Id.</u> at 14. Ericka Buie is the co-defendant in Count Five of the second superseding indictment, which alleges that beginning in approximately August 2019 and continuing through on or about November 10, 2020, the defendant and Buie conspired with each other and others "to knowingly recruit, entice, harbor, transport, provide, and obtain by any means, in and affecting interstate commerce, female victims, knowing and in reckless disregard of the fact that means of force, threats of force, fraud, and coercion, and any

1

combination of such means, would be used to cause victims to engage in commercial sex acts in violation of" 18 U.S.C. §§1591(a)(1) and 1591(b)(1), all in violation of 18 U.S.C. §1594(c). Dkt. No. 17 at 5. The government argued that evidence that the defendant engaged in acts that arguably constituted force, fraud or coercion with women other than the alleged victims of the substantive counts proved that he "purposefully 'publicized' his manipulation, coercion, and violence to create a climate of fear to keep his victims compliant and working for his benefit." Dkt. No. 99 at 14. It further argued that the defendant's conduct toward women other than the alleged victims of Counts One through Four was "relevant to show how defendant used force, threats of force, and coercion to get his victims to engage in commercial sex acts and also relevant to show that he had the requisite *mens rea* while doing so." Id. The government stated that some of this evidence would come from the defendant's "co-defendant." Id. at 18.

The government also argued that evidence of testimony about the defendant's arrests for possessing guns or narcotics and reports of "violent batteries perpetrated against the named victims, his co-conspirator [Buie], and other witnesses" constituted evidence of the conspiracy charged in Count Five; it asserted that "[w]hile the dates charged in Count Five are not coterminous with the full length of the defendant's trafficking scheme, the existence of the scheme prior to co-defendant Ericka Buie joining it in approximately August 2019 is relevant to proving the conspiracy that was created when she joined the criminal conduct that she knew was already occurring." Id. at 19-20. It

argued that the defendant's alleged violent actions against Buie "were designed to, and did, keep Buie compliant in facilitating and enforcing the defendant's expectations for his victims." Id. at 20.

The defense objected that the government had not provided enough detail to allow it to consider the government's request, or to allow the court to rule. Dkt. No. 111 at 6. The defense also argued that the span of the conspiracy charge is narrow—August 2019 to November 2020—and that any direct evidence of the defendant's treatment of other women to prove the conspiracy charge must be confined to that period. Id. at 12.

At the December 14, 2023 final pretrial conference, the court reserved ruling on the government's motion because it agreed with the defense that without more detail, it could not evaluate the motion. Dkt. No. 123 at 2. On December 19, 2023, the government filed a brief in support of the motion, providing additional detail. Dkt. No. 122. With regard to alleged acts of violence against co-conspirator Ericka Buie, the government explained:

> The government also intends to introduce evidence that the defendant was violent toward his co-conspirator Ericka Buie. On one occasion, for example, the defendant punched her repeatedly over the course of several hours while driving her around Milwaukee in a car. On another occasion, he choked her and beat her badly enough to break her ribs.
>
> All the incidents the government plans to introduce occurred during the conspiracy alleged in Count Five, while Ms. Buie acted as the defendant's "bottom." In that role, Buie performed many of the standard tasks of a bottom. For example, she posted commercial sex advertisements for defendant's victims, communicated with potential customers, transported the victims to the sex dates, provided a location (her basement) for the performance of the sex acts, and provided drugs to the victims. Buie did these things at the defendant's explicit direction, and for his financial benefit. However,

3

Buie was not a traditional "bottom" in that she did not, herself, perform commercial sex acts for the defendant. So, when the defendant beat her, sometime he did so because his sex trafficking victims "fucked up." Other times, the rationale was that it was her punishment for "losing" or "stealing" his money. Of course, "his money" was money that was earned through the commercial sex acts of his victims and drug dealing.

Buie will testify that these beatings made her fearful of the defendant and made her continue to comply with his demands. These demands included demands that she post ads, provide a location for his victims to engage in commercial sex, and to generally manage his sex trafficking enterprise. Buie will also testify that the defendant's constant focus on money—taking hers and blaming her for not keeping better track of "his"—coupled with his violence ultimately made her feel like she was being "pimped out" just like his other victims. This testimony, including evidence of the defendant's extensive violence toward Buie is integral evidence of the charges in the indictment. The defendant used violence against Buie to further the conspiracy and to ensure that Buie kept working to make sure that his sex-trafficking victims kept earning money for his benefit.

Because Buie was integral to the defendant's sex trafficking enterprise between 2019 and 2020, and because the defendant's violence toward her ensured that she did what he needed to keep his sex trafficking going and profitable, the defendant's violence against Buie is intrinsic evidence of the charged offenses. Moreover, evidence of the defendant's violence against Buie goes to an essential element of the conspiracy charge. That charge requires the government to prove that the defendant agreed with another person to engage in sex trafficking by force, fraud, and coercion. Thus, the parties to the sex trafficking conspiracy need to know, or recklessly disregard, that force, fraud, and coercion would be used to cause the victims to engage in a commercial sex act. Evidence that the defendant used violence to induce Buie to be part of the sex trafficking enterprise makes it more likely that Buie knew, or recklessly disregarded, that the defendant would use violence to induce his victims to engage in commercial sex acts. Such evidence, therefore, demonstrates that Buie had the requisite *mens rea* to be a co-conspirator, and thus proves an essential element of the charge against the defendant.

Id. at 4-6.

4

At the December 21, 2023 continued pretrial conference, the court deferred ruling on whether the government could introduce (as direct evidence) evidence of the defendant's alleged violence toward Buie that did not take place in the presence of the named victims. Dkt. No. 133 at 2. The court stated that before Ms. Buie testified, the court would allow *voir dire* of her outside the presence of the jury, then make its ruling. Id.

On the fifth day of trial—January 12, 2024—Ericka Buie took the stand outside the presence of the jury and answered questions from the parties. Much of her brief testimony comported with the government's predictions: when she began her relationship with the defendant, she was not aware that he was making money from the sex trade; she later learned that the defendant made money through the sex trade; she eventually assisted him by posting ads, providing her residence for sex dates, providing transportation for the women and performing other tasks. Although the parties did not elicit the details, Ms. Buie testified about two incidents during which the defendant had been violent with her—a July 2019 incident where the defendant allegedly choked her and a later incident in which he allegedly beat her severely. Ms. Buie testified that that the defendant's violence toward her made her think he was or would be violent with the other women (the court's words, not Ms. Buie's verbatim testimony) and that it influenced her to continue to assist him. Ms. Buie also testified that she had witnessed at least one incident where the defendant had engaged in violence against another women and that she had "intervened" in

5

Case 2:21-cr-00253-PP   Filed 01/14/24   Page 5 of 18   Document 167

an unstated number of situations to try to prevent the defendant from being violent with another women/other women.

The government argued that evidence of the defendant's violence against Ms. Buie—who is a co-conspirator and not an alleged victim of any of the substantive counts—is admissible for three reasons, even though that alleged violence did not take place in the presence of the victims of Counts One through Four of the second superseding indictment. First, the government argued that the fact that the defendant allegedly was violent with Buie provided Buie (the co-conspirator) with suspicion that he was using or would use violence to cause the women working with him to engage in commercial sex acts, a suspicion that she recklessly disregarded. The government argued that this went directly to the elements of the conspiracy-to-commit-sex-trafficking charge in Count Five. Second, the government argued that the defendant's alleged acts of violence against Buie caused her to continue to assist the defendant in the alleged sex trafficking enterprise. Finally, the government argued that even if the court concluded that the defendant's acts of violence against Buie were not direct evidence of the conspiracy, they were admissible to rebut what the government expected would be the defense attack on her credibility. Specifically, the government explained that Buie had not been fully forthcoming with law enforcement about her and the defendant's activities, and the government argued that one of the reasons for that lack of candor was because the defendant had been violent with Buie. (Buie briefly confirmed this during her *voir dire* on January 12, 2024.)

The defense disagreed. It argued that the "reckless disregard" *mens rea* articulated in the statute required that Ms. Buie have more than a "suspicion" that the defendant was using violence or the threat of violence to get other women to engage in commercial sex acts. The defense argued that evidence that the defendant's alleged violence against Ms. Buie influenced *her* to assist with the alleged sex-trafficking enterprise was a *defense* for Ms. Buie, not evidence of a conspiracy. It argued that if the court were inclined to allow the government to elicit information about the defendant's alleged acts of violence against Buie to address attacks on Buie's credibility based on her lack of candor with law enforcement, the court should greatly limit the details the government could elicit. And generally, the defense argued that the government was seeking to admit propensity evidence in violation of Fed. R. Evid. 404(b); it was trying to elicit evidence that the defendant was violent with women other than the alleged victims to show that the defendant must have been violent with the victims because he is a violent person. The court asked the parties for authority, which the parties have provided. Dkt. Nos. 165, 166.

B. <u>Applicable Law</u>

Section 1594(c) of Title 18 says that "[w]however conspires with another to violate section 1591 shall be fined under this title, imprisoned for any term of years or for life, or both." Count Five of the second superseding indictment charges the defendant and Buie with conspiring to violate 18 U.S.C. §1591(a)(1). Section 1591(a)(1) says that anyone who "knowingly . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains,

7

patronizes, or solicits" a person to engage in a commercial sex act "knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion . . . or any combination of such means will be used to cause the person to engage in a commercial sex act" is subject to the punishments listed in the statute. The defendant and Ms. Buie have been charged with conspiring—agreeing—with each other to knowingly engage in the activities listed in §1591(a) (recruit, entice, harbor, transport, etc.) "knowing, or . . . in reckless disregard of the fact, that means of force, threats of force, fraud, coercion" or a combination thereof would be used "to cause" the person recruited, enticed, harbored, transported, etc. to engage in a commercial sex act.

To prove that the defendant and Buie conspired to "knowingly" recruit, entice, harbor, transport, provide, obtain, advertise, maintain, patronize or solicit a person or persons to engage in a commercial sex act, the government must prove that the defendant and Buie "realize[d] what [they were] doing and [were] aware of the nature of [their] conduct, and [did] not act through ignorance, mistake, or accident." Seventh Circuit Pattern Jury Instruction 4.10 (2023 ed.) (citing United States v. Graham, 431 F.3d 585, 590 (7th Cir. 2005)).

The government also must prove that the defendant and Buie conspired to knowingly engage in that conduct "knowing, or, . . . in *reckless disregard* of the fact, that means of force, threats of force, fraud, coercion . . . or any combination of such means w[ould] be used to cause the person to engage in a

8

commercial sex act. The Seventh Circuit Committee on Pattern Jury Instructions has explained that

> [a]lthough the Seventh Circuit has not explicitly approved a particular jury instruction for "recklessly disregards" in the context of § 1591, the Committee recommends defining it. In *United States v. Carson*, 870 F.3d 584, 601 (7th Cir. 2017), however, the Seventh Circuit found the following instruction erroneous:
>
> > A person "recklessly disregards" a fact within the meaning of this offense when he is aware of, but consciously or carelessly ignores facts and circumstances that would reveal the fact that either: (1) force, threats of force, or coercion would be used to cause the person identified in the indictment to engage in a commercial sex act, or (2) the person identified in the indictment was under eighteen years of age and would be caused to engage in a commercial sex act.
>
> The "or carelessly ignores" language lowered the requisite standard. See also *United States v. Groce*, 891 F.3d 260, 269 (7th Cir. 2018) (wrong to instruct the jury that recklessly disregards can be satisfied by where the person "consciously *or* carelessly ignores facts and circumstances") (emphasis added). Other Circuits have associated "recklessly disregards" with consciously ignoring facts and circumstances. See *United States v. O'Neal*, 742 F. App'x 836, 842-43 (5th Cir. 2018) ("We have not had many cases that discuss a defendant's reckless disregard of a victim's age under § 1591. But the common definition of reckless disregard is "[c]onscious indifference to the consequences of an act"); *United States v. Roy*, 630 F. App'x 169 (4th Cir. 2015) (jury instruction provided "A person 'recklessly disregards' a fact within the meaning of this offense when he is aware of, but consciously ignores, facts and circumstances that would reveal that force, threats of force, fraud, or coercion or any combination of such means could be used to cause a victim to engage in a commercial sex act.").

Committee Note to Seventh Circuit Pattern Instruction for statutory elements of §1591(a)(1) (2023 Ed.).[1]

---

[1] The government incorrectly argues that the "pattern instructions provide clear guidance as to how to define reckless disregard." Dkt. No. 166 at 2 (citing Seventh Circuit Pattern Instructions, 1591(a)(1) Committee Comment, p. 743). Page 743 of the 2023 Pattern Jury Instructions is the instruction defining

9

Case 2:21-cr-00253-PP   Filed 01/14/24   Page 9 of 18   Document 167

As the committee observed, in Carson the district court gave the jury a definition of "reckless disregard" that was disjunctive: it told the jury that a person recklessly disregarded a fact "when he is aware of, but consciously *or* carelessly ignores facts and circumstances" that would reveal the fact that force, threats of force or coercion would be used to cause a person to engage in a commercial sex act. Carson, 870 F. 3d at 601. The defendant argued—and the government conceded—"that the instruction should have stated that [the defendant] must 'consciously **and** carelessly ignore' facts and circumstances that would reveal that coercion occurred." Id. The Seventh Circuit implicitly agreed that the instruction should have been given in the conjunctive—the judge should have told the jury that the government must show that the defendant was aware of, but consciously *and* carelessly ignored facts and circumstances that would reveal that force, threats of force or coercion would be used. Id.

The defendant in Carson also argued that to prove reckless disregard, the government was required to prove "more than awareness of 'facts from which the inference could be drawn,' but rather . . . that the defendant actually

---

materiality. The language the government quotes appears on page 745, and comes from the committee note to the elements instruction for sex trafficking of a minor under 18 U.S.C. §1591. The definition provided in that committee note uses the disjunctive "consciously *or* carelessly" language that the Seventh Circuit found erroneous in Carson and Groce, and the note cites an Eleventh Circuit case and district court case from Florida. The instruction providing the elements of sex trafficking of a *non*-minor appears on pages 748-49 of the 2023 pattern jury instructions, and the committee comment the court has quoted appears on pages 750-51. The substantive instruction itself—as opposed to the committee note—does not define "reckless disregard," and it is the substantive instruction, not the committee note, which the jury hears.

drew the inference." Id. at 603. The Seventh Circuit disagreed, observing that "[t]he plain language of Section 1591 criminalizes sex-trafficking activities done 'in reckless disregard of the *fact*' that force, threats of force, fraud, or coercion will cause someone to prostitute herself . . . ." Id. "[T]he phrase 'reckless disregard' in this statute requires only an awareness of facts and circumstances that give rise to a risk of a Section 1591 violation, not an awareness of the risk itself." Id. (citing United States v. Jackson, 622 F. App'x 526, 528 (6th Cir. 2015) and United States v. Phea, 755 F.3d 255, 261 (5th Cir. 2014)). In other words, the defendant must be aware of the facts and circumstances from which an inference of the use of force or threats of force could be drawn, but the defendant is not required to draw the inference.

Similarly, in Groce (cited by the defendant), the district court instructed the jury that "a person **recklessly disregards** a fact when he is aware of, but consciously or carelessly ignores, facts and circumstances that would reveal the fact that force, threats of force, or coercion would be used to cause another person to engage in a commercial sex act." Groce, 891 F.3d at 268 (emphasis in original). The defendant argued that this instruction was erroneous because it did not require the government to prove that he consciously disregarded the relevant facts and circumstances. Id. The government conceded that the instruction was wrong; the Seventh Circuit said, "Let us say it was obviously wrong, and should not have been given in any case." Id. at 269. But because the defendant had not objected to the instruction at trial—in fact, had told the court he did not object to it—the court reviewed the instruction under the plain

11

error standard. Id. The court found that the defendant could not show plain error because "overwhelming evidence demonstrated that [the defendant] knew, and did not merely recklessly disregard, that his deliberate pattern of physical abuse, threats, and heroin control caused the victims to prostitute." Id.

The defendant argues that Groce (which was decided nine months after Carson) held that "criminal recklessness" requires actual awareness of a substantial risk and conscious disregard of it. Dkt. No. 165 at 2. If the Groce court did so hold, that holding would appear to conflict with the Carson court's ruling months earlier that §1591 requires only an awareness of facts and circumstances that give rise to a risk, not awareness of the risk itself. It is not clear that the Groce court held what the defendant says it did—the language the defendant quotes is part of the appellate court's recitation of the *defendant's* argument: "Groce argues [the erroneous instruction] lowered the *mens rea* from criminal recklessness (which requires actual awareness of a substantial risk and conscious disregard of it) to mere negligence." Groce, 891 F.3d at 268. It is not clear whether the Seventh Circuit was stating that reckless disregard requires actual awareness of a substantial risk, or whether it was recounting that the *defendant* had argued that that was what was required. Regardless, the Seventh Circuit has found error in two cases in which the district court instructed the jury that the government could prove reckless disregard by proving that a defendant was aware of, but consciously *or* carelessly, ignored facts and circumstances that would reveal the fact that

12

force, threats of force, fraud or manipulation would be used. Reckless disregard requires conscious *and* careless disregard.

Fed. R. Evid. 404(b)(1) prohibits admission of evidence of "any other crime, wrong, or act" to prove "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." But such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Broadly speaking, the court cannot admit evidence that the defendant was violent with someone other than the victims of the offenses charged in Counts One through Four to show that he was violent with the victims of the offenses charged in Counts One through Four. That would be allowing "propensity" evidence.

C.    <u>Analysis</u>

To prove Count Five—the conspiracy count of the superseding indictment—the government must prove that the defendant and Ericka Buie agreed to knowingly recruit, entice, harbor, transport, provide, obtain, advertise, maintain, patronize or solicit people, knowing or in reckless disregard of the fact that means of force, threats of force, fraud, coercion or a combination would be used to cause the person to engage in a commercial sex act. That means the government must show that the defendant *and* Buie knew, or recklessly disregarded, the fact that force, threats of force, fraud, coercion or a combination would be used to cause someone to engage in a commercial sex act. The government relies on the "reckless disregard" prong as to Buie, stating

that it "will demonstrate that there were many 'facts and circumstances' that Ms. Buie ignored, which would have revealed that the defendant was engaging in force, fraud, or coercion to get his victims to engage in commercial sex acts." Dkt. No. 166 at 3. Reading the instruction committee's application note, Carson and Groce together, the court concludes that to demonstrate that Buie—a co-conspirator—knowingly recruited, enticed, harbored, transported, provided, obtained, maintained, patronized or solicited people "in reckless disregard of the fact that means of force, threats of force, fraud, coercion" or a combination would be used to cause those people to engage in commercial sex acts, the government must prove that during the period of the conspiracy, Buie was aware of, but consciously *and* carelessly ignored facts and circumstances that would reveal the fact that force, threats of force, fraud, coercion or a combination of those would be used to cause others to commit commercial sex acts.

The government asserts that it will prove Buie was aware of, but consciously and carelessly ignored or disregarded, many facts and circumstances which would have revealed that the defendant was using, or would use, force, threats of force, fraud or coercion to cause people to engage in commercial sex acts; it lists some of those facts in its response to the defense statement of authority. Dkt. No. 166 at 3-4. (The government includes in this list "conduct that Ms. Buie witnessed the defendant engage in toward the women, which included times when Buie became concerned that the defendant would engage in violence against them," "includ[ing] times when she

14

intervened to stop the violence as or immediately before it occurred." Id. at 4.) It says that one of these facts and circumstances was the defendant's violence toward Buie herself, and argues that that violence is "particularly salient as it was related to money she collected (or failed to collect, or lost track of) from the commercial sex activities." Id. The government asserts that the fact that the defendant beat Ms. Buie "for that reason is undoubtedly *one* fact that the government can rightly argue would have revealed to Ms. Buie that the Defendant was engaging in force against his victims." Id. The government argues that it was not the single fact that the defendant had allegedly used violence against Ms. Buie that proves her reckless disregard; rather, it is that fact, combined with all the other facts and circumstances Ms. Buie witnessed, that proves her reckless disregard. Id. at 6.

Ms. Buie's proffered testimony that the defendant subjected her to violence, which caused her to think that he would engage in violence with other women, is part of the government's proof of Ms. Buie's reckless disregard of facts and circumstances that would have revealed that the conspiracy would involve the use of force or violence to cause people to engage in commercial sex acts, and it is admissible for that purpose. It is admissible for another reason—one that the government discussed in detail in its supplement to its pretrial motion *in limine*. During its discussion of this issue on January 12, 2024, the court expressed concern about the government's argument that evidence of the defendant's alleged violence toward Ms. Buie was admissible to show that that violence influenced Ms. Buie to assist the defendant in his alleged sex-

15

trafficking activities. The court expressed the view that this sounded like a defense to the conspiracy charge against Ms. Buie, and noted that the government had filed a plea agreement between Ms. Buie and the government. But upon reviewing the government's pre-trial supplement, the court better understands the government's argument as an argument that the defendant's use of violence against Ms. Buie was a tool that the defendant used to maintain the conspiracy. The government has argued that from late summer 2019 through November 2020, Ms. Buie played a critical role in the defendant's alleged sex-trafficking operation, acting as what is colloquially known as a "bottom" for the defendant. She allegedly assisted the defendant in advertising women for sex dates, in providing transportation, in providing a place for the women to engage in sex dates, in collecting money for the defendant. It is relevant to the structure and functioning of the conspiracy that, if Ms. Buie failed in that critical role, the defendant used methods—including, allegedly, violence—to address and correct that failure. This evidence is roughly similar to evidence presented in a prosecution of a drug conspiracy, where the government presents proof that the head of a drug trafficking organization used an "enforcer" to punish lower-level traffickers for stealing or losing drugs or money.

      For both these reasons, evidence that the defendant engaged in acts of violence toward Ms. Buie constitutes direct evidence that she recklessly disregarded facts and circumstances that would have revealed that the conspiracy involved, among other things, the use of force or the threat of the

16

Case 2:21-cr-00253-PP   Filed 01/14/24   Page 16 of 18   Document 167

use of force to cause people to engage in commercial sex acts, and constitutes direct evidence of Ms. Buie's role in the conspiracy and how the defendant allegedly made certain that she played that critical role in a way that would ensure that the conspiracy would succeed.

The court need not delve too deeply into whether evidence of the defendant's alleged violence against Ms. Buie also would be admissible to refute an anticipated defense argument that she lied to law enforcement about her activity and that of the defendant. The defense questioned each of the four victims of the charges in Counts One through Four about the fact that, at times, they had had the opportunity to advise law enforcement of their allegations that they were being trafficked but did not do so. The defense does not dispute that it is likely to pursue a similar line of questioning with Ms. Buie. Evidence that, based on past experience, Ms. Buie feared reprisal from the defendant if she was forthcoming with law enforcement is admissible to explain her lack of candor. The defense appears to acknowledge this, urging only that the court "limit the amount of detail that could be provided regarding those incidents and . . . provide a limiting instruction." Dkt. No. 165 at 3 n.1. The court will not limit the detail the government may elicit, because it has concluded that the evidence is admissible as direct evidence of the conspiracy.

The government does not object to the court issuing a limiting instruction *if* the court concludes that the evidence is admissible only to counter an attack on Ms. Buie's credibility. Dkt. No. 166 at 7. The court has concluded that the evidence is admissible as direct evidence of the conspiracy,

and given that, it is difficult to determine how such a limiting instruction would read. Seventh Circuit Pattern Jury Instruction 3.11, "Evidence of Other Acts by Defendant," requires the court to explain the purposes for which the "other acts" evidence properly is being admitted. The court has concluded that evidence of the defendant's alleged violence toward Ms. Buie is not improper "propensity" evidence, and it concludes that a limiting instruction (presumably some version of Pattern Instruction 3.11) would serve to confuse the jury. Of course, the government may not argue that Ms. Buie's testimony that the defendant subjected her to violence raises an inference, or proves, that the defendant must have committed the crimes alleged in Counts One through Four, or must have used force or violence on women to force them commit sex acts during the period of the conspiracy.

D. Conclusion

The court **GRANTS** the government's motion *in limine* IV as it relates to the government's request to admit as direct evidence of the conspiracy charged in Count Five of the second superseding indictment evidence that the defendant engaged in violence against Ericka Buie. Dkt. No. 99 at 13-24.

Dated in Milwaukee, Wisconsin this 14th day of January, 2024.

BY THE COURT:

**HON. PAMELA PEPPER**
**Chief United States District Judge**